UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

|  |  |
|---|---|
| STEVEN L. KARRAKER, MICHAEL A. KARRAKER, and CHRISTOPHER M. KARRAKER, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 02-2026 |
| RENT-A-CENTER, INC., J. ERNEST TALLEY, and ASSOCIATED PERSONNEL TECHNICIANS, | ) ) ) ) |
| Defendants. | ) ) ) |

**O P I N I O N**

This matter is before the court on Plaintiffs' Amended Petition for Attorney Fees and Costs (#290). For the reasons that follow, Plaintiffs are awarded $155,328.85 in attorney fees and costs.

BACKGROUND

On January 28, 2002, Plaintiffs Steven L. Karraker, Michael A. Karraker, and Christopher M. Karraker, filed a Complaint (#1) against Rent-A-Center (RAC) and J. Ernest Talley. On March 22, 2002, Plaintiffs filed an Amended Complaint (#4) and added Associated Personnel Technicians (APT) as a Defendant. In their Amended Complaint, Plaintiffs sought to initiate a class action lawsuit against Defendants alleging that RAC required all employees or outside applicants seeking management positions to submit to a battery of nine separate written tests. This battery of tests was commonly referred to as the Management Test. One of the individual exams included in the

Management Test was the Minnesota Multiphasic Personality Inventory (MMPI). The MMPI is a psychological test used by psychologists to diagnose and treat individuals with abnormal psychological symptoms and personality traits. Plaintiffs further alleged that RAC sent the completed Management Test answer sheets to APT, which scored the tests and prepared a two-page psychological profile on each tested employee.

On January 8, 2003, this court entered an Order (#70) granting Plaintiffs' Motion to File a Second Amended Complaint adding claims based upon the Americans with Disabilities Act (ADA). Plaintiffs' Second Amended Complaint (#72) was filed on January 8, 2003. The Second Amended Complaint included a Count II brought by Steven Karraker ("Karraker") against RAC based upon the ADA. Karraker was the only named Plaintiff in the ADA count because he was the only Plaintiff who filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Karraker alleged that he was employed by RAC from September 1997 to March 2001. Karraker alleged that he took the Management Test in 1997 and 1999. He was not promoted following taking the test. Karraker also alleged that he was fired on March 15, 2001, in retaliation for protesting the Management Test and because of the results of the Management Tests he took. Karraker further stated that he was bringing the action on behalf of himself and all other persons similarly situated. Subsequently, Plaintiffs filed a Motion to Certify Class (#99) and RAC filed a Motion for Partial Summary Judgment (#106). On February 17, 2004, this court entered an Order (#151) granting in part and denying in part RAC's Motion for Partial Summary Judgment. Summary judgment was entered in favor of RAC on Karraker's ADA claims of denial of promotions and retaliatory discharge. Karraker's claims based upon discriminatory termination and administration of the Management Test remained pending. This court also granted in part and

denied in part Plaintiffs' Motion to Certify Class. Along with certain state law claims, a class was certified as to Karraker's ADA claim based upon the administration of the Management Test. The class was defined as, "All past and present employees of RAC in Illinois who took the APT Management Test." Class certification was denied as to Karraker's claim of denial of promotions in violation of the ADA because that claim was untimely.

Plaintiffs and Defendants both subsequently filed motions for summary judgment. On May 7, 2004, this court entered an Order (#183) granting summary judgment in favor of Defendants on all of Plaintiffs' claims except for Karraker's termination claim. The parties subsequently submitted a Stipulation (#185) dismissing Karraker's termination claim. An appeal followed in which Plaintiffs argued this court erred in finding the use of the MMPI did not violate the ADA, dismissing Karraker's failure to promote claim, and dismissing Karraker's state law claim of public disclosure of private facts. The Seventh Circuit Court of Appeals issued its decision on June 14, 2005, affirming the dismissal of Karraker's failure to promote claim and Plaintiffs' public disclosure of private facts claim while reversing and remanding so summary judgment could be entered in favor of Plaintiffs on their claim that the MMPI is a medical examination under the ADA. See Karraker v. Rent-A-Center, 411 F.3d 831 (7th Cir. 2005)

On July 11, 2005, this court entered a text order re-opening this matter and granting summary judgment in favor of Plaintiffs on their claim that the MMPI is a medical examination under the ADA. Plaintiffs requested that all APT Management test results be destroyed by RAC as a result of this ruling. RAC consented to this relief. Pursuant to this court's order, RAC filed a Certificate of Compliance (#267) on February 3, 2006, indicating that all APT Management Test results had been destroyed. Finally, on September 12, 2005, RAC filed a second Motion for Summary

Judgment (#223) on Karraker's wrongful termination claim. This court granted that motion in an Opinion (#240) entered November 7, 2005. Plaintiffs were allowed thirty days to file a petition for fees and for Karraker's compensation as class representative following that ruling.

On May 19, 2006, this court entered an Opinion (#269) denying Plaintiffs' Petition for Attorney Fees, finding that Plaintiffs' success on their ADA claim was de minimis and insufficient to support prevailing party status. This court further granted Plaintiffs' Motion to Set Compensation for Steven Karraker and awarded Karraker $5,000 in compensation as class representative. Plaintiffs appealed the denial of attorney fees, and on July 9, 2007, the Seventh Circuit Court of Appeals vacated this courts denial of attorney fees and remanded the matter for a determination as to the reasonableness of the fees sought by Plaintiffs. See Karraker v. Rent-A-Center, Inc., 492 F.3d 896 (7th Cir. 2007). On September 5, 2007, Plaintiffs filed their Amended Petition for Attorney Fees and Costs (#290) and a Memorandum in Support (#291) along with voluminous supporting exhibits. On October 19, 2007, RAC filed its Response to Plaintiffs' Amended Petition for Attorneys Fees and Costs (#294). The matter is now fully briefed, and the court rules as follows.

## ANALYSIS

In their petition for attorney fees, Plaintiffs seek an award of attorney fees and costs in the amount of $316,918.22. RAC first objects to this amount by arguing again on remand that the injunctive relief recovered by Plaintiffs is de minimis and does not justify an award of attorney fees. Obviously, this court cannot adopt that position in light of the Seventh Circuit's decision. On appeal, the Seventh Circuit determined that, although it was a "close question," Plaintiffs were entitled to prevailing party status as a result of the destruction of the MMPI test results. Karraker, 492 F.3d at 898. The Seventh Circuit went on to state that this status "does not automatically make

the plaintiffs eligible for all of the fees they request" and it is left to this court to make a determination as to the reasonableness of the fees requested. Karraker, 492 F.3d at 900. It is to this issue the court now turns.

Under the Americans with Disabilities Act, a court may award reasonable attorney's fees to a prevailing party. 42 U.S.C. § 12205. A determination of the appropriate amount of attorney fees is left to the court's discretion. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999). "'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,'" which is commonly referred to as the lodestar. Spegon, 175 F.3d at 550, quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The party seeking a fee award bears the burden of demonstrating the reasonableness of the hours worked and the fees expended." Spegon, 175 F.3d at 550. This court must "'exclude from this initial fee calculation hours that were not reasonably expended' on the litigation." Spegon, 175 F.3d at 550, quoting Hensley, 461 U.S. at 434. The court "may then increase or reduce the modified lodestar amount by considering a number of factors, the most important of which is the 'degree of success obtained.'" Spegon, 175 F.3d at 550, quoting Hensley, 461 U.S. at 436 (citations omitted).

RAC first argues that Plaintiffs should not be permitted to recover those attorney fees incurred by Attorneys Fran Rudich and Seth Lesser. This court is aware that when it " reduces either the rate or hours proffered by an attorney when calculating the lodestar amount, it must provide a clear and concise statement why it chooses to do so." Mathur v. Board of Trs. of S. Ill. Univ., 317 F.3d 738, 742 (7th Cir. 2003). This court has carefully reviewed the documentation submitted by Plaintiffs in support of their Amended Petition for Attorney Fees and Costs, including

the itemization of hours for Attorneys Rudich and Lesser. Following this careful review, this court finds that the amount of hours expended by Plaintiffs' counsel to be reasonable in light of the complex nature of these proceedings. This was class action involving novel issues of law. As the Seventh Circuit has previously noted, this case has had "a significant impact not just on the law, but on human resources departments throughout the country." Karraker, 492 F.3d at 899. Plaintiffs' attorneys prepared a motion for class certification, multiple motions for summary judgment, and twice successfully appealed from this court's orders. Accordingly, this court finds no basis to find the number of hours worked by Plaintiffs' counsel to be unreasonable.

In the alternative, RAC argues that the hourly rates charged by Attorneys Rudich and Lesser should be reduced to rates equal to those of local attorneys. The documentation attached to Plaintiffs' Amended Petition indicates that Attorney Rudich, who practices in New York, charged an hourly rate of $325 while Attorney Lesser, who also practices in New York, charged an hourly rate of $540. "[I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if 'local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service.'" Mathur, 317 F. 3d at 744, quoting Chrapliwy v. Uniroyal, 670 F.2d 760, 768 (7th Cir. 1982). In other words, "a district court has the discretion to modify an out-of-town attorney's rate if 'there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were rendered.'" Mathur, 317 F. 3d at 744, quoting Chrapliwy, 670 F.2d at 769.

In the instant case, Mary Lee Leahy has demonstrated in her affidavit in support of attorney

fees that she is an accomplished and extremely competent attorney who has successfully litigated class action litigation all of the way to the United States Supreme Court. In addition, Leahy's co-counsel, William Riback, indicates in his affidavit that he has represented other plaintiffs in New Jersey Federal Court alleging use of the MMPI was a violation of the ADA. Thus, this is not a case where due to the "complexity and specialized nature of [the] case" "no attorney, with the required skills, is available locally." Chrapliwy, 670 F.2d at 768. Plaintiffs have failed to establish these additional attorneys from New York were required in light of the significant experience of both Leahy and Riback. Accordingly, this court finds it appropriate to reduce the attorney fees requested for Attorneys Rudich and Lesser to the billing rate of Attorney Leahy.[1] Plaintiffs' attorney fees will therefore be reduced in the amount of $24,980 ($4700 from Attorney Rudich and $20,280 from Attorney Lesser). Thus, this court arrives at a lodestar amount of $273,218.75.

RAC further argues that Plaintiffs are not entitled to recover any attorney fees subsequent to a letter sent by RAC on June 28, 2002, to Attorney Leahy. This letter states in relevant part:

> Additionally, while RAC is always willing to discuss settlement, the information you are requesting is overbroad and not easily obtainable. As I discussed with Mr. Riback, the best method to begin settlement discussions is for Plaintiffs to make a settlement demand that is either (1) a set total number; or (2) an amount per class member. RAC is willing to discuss removing the APT Employee Profiles from the files.

RAC argues that Plaintiffs recovered only the destruction of the APT Employee Profiles at the

---

[1] RAC has not objected to the hourly rates charged by Attorneys Leahy and Riback, and this court concludes that the hourly rates charged by these attorneys to be reasonable. Furthermore, RAC has not filed any objection to the costs sought by Plaintiffs.

conclusion of the litigation and thus are not entitled to the recovery of any fees after this offer of settlement.

In support of this argument, RAC cites Moriarty v. Svec, 233 F.3d 955 (7th Cir. 2000), which states that "[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of reasonable attorney fees, even where Rule 68 does not apply." Moriarty, 233 F.3d at 967. An offer is substantial where "the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party" and the determination of whether an offer is substantial is left to the discretion of the district court. Moriarty, 233 F.3d at 967. Furthermore, the court must only consider the offer and is not required to reduce the lodestar because of the offer. Moriarty, 233 F.3d at 967. This court has considered what RAC terms a settlement offer and deems the offer inadequate to decrease the lodestar amount. The letter clearly indicates that RAC was "willing to discuss" the removal of the test results. It is not an explicit offer to remove the test results and thus this court declines to reduce the amount of the attorney fees based on speculation as to whether RAC would indeed have removed the test results after discussions with Plaintiffs' counsel.[2]

Finally, RAC argues that Plaintiffs' attorney fees should be reduced based upon the degree of success they obtained in this litigation. In determining the degree of success Plaintiffs obtained, the court is to use the three-part test from Justice O'Connor's concurrence in Farrar v. Hobby, 506 U.S. 103, 121-22 (1992). Under this test, the court is to "'look at the difference between the

---

[2] Plaintiffs have filed a Motion to Strike All References to Settlement and Settlement Communications Contained in Defendant's Response to Plaintiffs' Petition for Attorney Fees and Costs (#295). Because this court has concluded that no reduction is required based upon RAC's asserted settlement offer, this court finds the Motion to Strike to be MOOT.

judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and finally, the public purpose served by the litigation.'" Connolly v. National School Bus Serv., Inc., 177 F.3d 593, 597 (7th Cir. 1999), quoting Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir. 1993). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." Connolly, 177 F.3d at 597, quoting Bankston v. State of Ill., 60 F.3d 1249, 1256 (7th Cir. 1995).

This court first notes that Plaintiffs failed to prevail on all but one claim brought in this litigation. Plaintiffs failed to prevail on Karraker's wrongful termination and failure to promote claims under the ADA. Plaintiffs further failed to prevail on claims brought pursuant to the Illinois Clinical Psychologist Licensing Act and the Illinois Mental Health and Developmental Disabilities Confidentiality Act. Finally, Plaintiffs' failed to prevail on their claim for public disclosure of private facts. Thus, Plaintiffs' only success was on their claim that the MMPI is a medical examination under the ADA.

In cases where Plaintiffs are only partially successful, the court should determine "whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award . . . fees for . . . unsuccessful claims." Dunning v. Simmons Airlines, Inc., 62 F.3d 863, 872 (7th Cir. 1995). Plaintiffs cannot recover attorney fees for unsuccessful claims that are "distinct in all respects from his successful claims." Bryant v. City of Chicago, 200 F.3d 1092, 1101 (7th Cir. 2000). However, if Plaintiffs' claims are related to a "common core of facts or are based on related legal theories . . . time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation." Bryant, 200 F.3d at 1101. In this situation, the court

should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Bryant ,200 F.3d at 1101. Finally, Plaintiffs may not recover all attorneys fees for time spent on all claims "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Bryant, 200 F.3d at 1102.

Attorney Leahy indicates in her Amended Petition for Attorney Fees that she has not included fees and costs which were devoted exclusively to claims on which Plaintiffs did not prevail. Based upon this court's review, these deductions by Attorney Leahy and her co-counsel are an accurate representation of those fees associated with the non-ADA claims. Attorney Leahy argues that the facts underlying all of the ADA claims were the same and the legal issues were intertwined. This court agrees that the ADA claims shared a common core of facts. Thus, this court turns to "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Bryant, 200 F.3d at 1102.

Among Plaintiffs' ADA claims, Plaintiffs were successful only on their claim that the MMPI is a medical test under the ADA.[3] With regard to this one successful claim, as this court stated in its prior order ruling on attorney fees, RAC had ceased administering the Management Test before Plaintiffs filed the instant action. The resulting injunctive relief was the removal of the APT test results from RAC's employee personnel files. However, the test results were kept in a filing cabinet in personnel files. Anyone who desired to see the records needed permission from someone in the payroll department. The filing cabinet was locked. At the time the records were ordered destroyed they had been moved to a locked room. There is no indication in the record that there was a threat these test results could be disclosed to third parties or that they were used any longer in promotion

---

[3] In addition, Steven Karraker was awarded $5,000 as class representative on this claim.

decisions by RAC. Thus, this court determines that the difference between the judgment recovered and the recovery sought is substantial. However, as concerns the significance of the legal issues on which Plaintiffs prevailed and the public purpose served by the litigation, the Seventh Circuit noted that this case has had "a significant impact not just on the law, but on human resources departments throughout the country." Karraker, 492 F.3d at 899.

In balancing the limited success of Plaintiffs with the public significance of the decision, this court determines that a reduction is warranted. "In reducing a fee award, a district court may attempt to identify specific hours to be eliminated or it may simply reduce the award across the board to account for the limited success." Bryant, 200 F.3d at 1102. After balancing the public purpose served by the litigation along with Plaintiffs' limited success, this court finds a fifty percent reduction in the lodestar amount to be appropriate.

IT IS THEREFORE ORDERED:

(1) Plaintiffs' Motion to Strike All References to Settlement and Settlement Communications Contained in Defendant's Response to Plaintiffs' Petition for Attorney Fees and Costs (#295) is denied as MOOT.

(2) Plaintiffs' Amended Petition for Attorney Fees and Costs (#290) is GRANTED. Plaintiffs are awarded $136,609.38 in attorney fees and $18,719.47 in costs for a total of $155,328.85.

ENTERED this 2nd day of May, 2008.

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF JUDGE
